**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wallace Morris, | No. CV-21-08102-PCT-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Embry-Riddle Aeronautical University Incorporated, | |
| Defendant. | |

Pending before the Court is Plaintiff Dr. Wallace Morris's motion to remand. (Doc. 7.) For the following reasons, the motion is denied.

## BACKGROUND

On April 9, 2021, Plaintiff, a Colorado citizen, filed the complaint in Yavapai County Superior Court, naming as the sole Defendant Embry-Riddle Aeronautical University Incorporated. (Doc. 1-3 at 3.) The complaint alleges that Defendant is "a Florida corporation doing business in Yavapai County, Arizona." (*Id.* ¶ 2.) Plaintiff, a former Assistant Professor at Defendant's Arizona campus, brings claims for breach of his employment contract, promissory estoppel, and wrongful termination/constructive discharge. (*Id.* at 14-17.)

On May 10, 2021, Defendant removed the action to federal court. (Doc. 1.) The sole basis on which subject matter jurisdiction is asserted is 28 U.S.C. § 1332(a) (diversity). (*Id.* ¶ 8.)

On June 6, 2021, Plaintiff filed the pending motion to remand, asserting that "Embry

Riddle has failed to meet its burden of proof to establish that its principal place of business is in Florida, not Arizona," and that "[b]ecause Embry Riddle is a citizen of Arizona, it is precluded from removing this matter to federal court pursuant to 28 U.S.C. § 1441(b)(2)" (Doc. 7 at 1), which provides that "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

On June 22, 2021, Defendant filed a response in opposition to the motion to remand. (Doc. 12.)

On June 28, 2021, Plaintiff filed a reply brief. (Doc. 13.)

**DISCUSSION**

I. <u>Legal Standard</u>

The party seeking to invoke diversity jurisdiction has the burden of proof, *Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986), by a preponderance of the evidence. *McNatt v. Allied-Signal, Inc.*, 972 F.2d 1340 (9th Cir. 1992); *see* 13B Federal Practice § 3611 at 521 & n. 34. "When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010).

A corporation, whether incorporated in a state of the United States or in a foreign country, is "deemed a citizen of its place of incorporation and the location of its principal place of business." *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 990 (9th Cir. 1994); 28 U.S.C. § 1332(c)(1). "[T]he phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz*, 559 U.S. at 80. This place, metaphorically dubbed the corporation's "brain" or "nerve center," "will typically be found at a corporation's headquarters," "provided that the headquarters is the actual center of direction, control, and coordination,[1] . . . and not simply an office where the corporation

---
[1] "[I]f the record reveals attempts at manipulation—for example, that the alleged 'nerve center' is nothing more than a mail drop box, a bare office with a computer, or the

- 2 -

holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Id.* at 80-81, 93, 95. It is "a place *within* a State," "not the State itself." *Id.* at 93.

In *Hertz*, the Supreme Court specifically rejected the "general business activities test," which focused on where the "most important" place of business activities is located:

> The metaphor of a corporate "brain," while not precise, suggests a single location. By contrast, a corporation's general business activities more often lack a single principal place where they take place. That is to say, the corporation may have several plants, many sales locations, and employees located in many different places. If so, it will not be as easy to determine which of these different business locales is the "principal" or most important "place."

*Id.* at 95.

The Supreme Court emphasized that "[c]omplex jurisdictional tests complicate a case, eating up time and money as the parties litigate, not the merits of their claims, but which court is the right court to decide those claims," "produce appeals and reversals, encourage gamesmanship, and, again, diminish the likelihood that results and settlements will reflect a claim's legal and factual merits," and eat up "[j]udicial resources." *Id.* at 94. "[C]ourts benefit from straightforward rules under which they can readily assure themselves of their power to hear a case." *Id.* "A 'nerve center' test offers such a possibility. A general business activities test does not." *Id.* at 95.

II. Analysis

Plaintiff argues that Defendant is an Arizona citizen because "there is no indication that the Florida campus serves as Embry-Riddle's 'main' campus" and "Embry-Riddle has long advertised the Prescott campus as its premier and most prestigious campus." (Doc. 7 at 2-3.) Plaintiff also asserts that "[a]ll of the decisions Embry-Riddle made with respect to [Plaintiff's] employment in this matter were made by officers and directors who reside in and are citizens of Arizona." (*Id.* at 3.) Finally, Plaintiff notes that several of Defendant's board members are not citizens of Florida. (*Id.*)

---

location of an annual executive retreat—the courts should instead take as the 'nerve center' the place of actual direction, control, and coordination, in the absence of such manipulation." *Hertz*, 559 U.S. at 97.

These arguments miss the mark. Whether Defendant's Arizona or Florida campus is (or is advertised as) Defendant's "main," "premier," or "most prestigious" campus speaks to the "general business activities test," which focuses on where the "most important" place of business activities is located—the test the Supreme Court expressly rejected in favor of the "nerve center" or "headquarters" test. *Hertz*, 559 U.S. at 95. Furthermore, it is unsurprising that decisions made "with respect to [Plaintiff's] employment in this matter" were made by Arizona citizens. The existence of a corporate nerve center in one state does not preclude the possibility that some corporate decisionmakers will be based in other states. The "various 'lower level' officers" (Doc. 7 at 4) on whom Plaintiff relies may have decision-making power at their location, but they do not run the corporation. And the fact that three board members are not citizens of Florida—none of whom, notably, are citizens of Arizona—does little to establish that Defendant's principal place of business is in Arizona.

Plaintiff asserts that he is "aware of numerous Board meetings that took place in Arizona." (Doc. 7 at 6.) However, Plaintiff provides no evidence in support of this contention—the only exhibits attached to the motion are what appear to be website printouts, and Plaintiff did not submit a declaration verifying the existence of his belief concerning the location of the Board meetings (much less providing any foundation for it).

Defendant, in contrast, submitted as evidence the sworn declaration of Brandon Young, Defendant's Chief Human Resources Officer.[2] (Doc. 12-1.) Mr. Young declared, in relevant part, as follows: Defendant "has three campuses: (1) Daytona Beach, Florida; (2) Prescott, Arizona; and (3) the Worldwide Campus [which] has 125 total locations." (*Id.* ¶ 5.) Six high-ranking corporate officials—the President, Senior Vice President for Academic Affairs & Provost, Senior Vice President & Chief Operating Officer, Senior Vice President for Finance & Chief Financial Officer, Vice President for Enrollment

---

[2] Defendant also submitted its Article of Incorporation (Doc. 12-1 at 6-9), an annual report filed with the Secretary of State (*id.* at 11-12), Defendant's "entity information" on file with the Arizona Corporation Commission (*id.* at 14-16), and a chart containing the names and titles of certain high-level executives (*id.* at 18).

Management, and Vice President & General Counsel—are all "located in Daytona Beach, Florida." (*Id.* ¶ 6.) The Chancellors of the Arizona campus and the Worldwide campus "directly report to" the President in Florida. (*Id.* ¶ 7.) Defendant's senior leaders "direct, control, and coordinate [Defendant's] activities from their Daytona Beach, Florida location on a daily basis for each of [Defendant's] three campuses and for all of its locations worldwide." (*Id.* ¶ 8.)

Plaintiff replies that "the evidence is clear that most of the Board members are not domiciled in Florida" and asserts that "[s]imply maintaining an office in Florida for the Board to travel to attend meetings is insufficient to establish that [Defendant's] nerve center is in Florida." (Doc. 13 at 3.) But this argument misunderstands the Supreme Court's decision in *Hertz*. Assuming *arguendo* that "most" of the Board members live in various places outside of Florida and must fly in for Board meetings, this is nevertheless *not* the hypothetical situation posited in *Hertz*—where the true nerve center is in State A, but the folks in State A fly to State B to hold their meetings. Here, at least six of the most important members of senior leadership are Florida citizens, and the senior leaders "direct, control, and coordinate [Defendant's] activities from their Daytona Beach, Florida location on a daily basis for each of [Defendant's] three campuses and for all of its locations worldwide." (Doc. 12-1 ¶ 8.) If, at times, out-of-state Board members fly into Florida to attend meetings at the corporate headquarters, that does not somehow mean that Defendant's principal place of business is located somewhere else. Furthermore, Plaintiff has submitted no evidence pointing toward Arizona as Defendant's principal place of business.

Mr. Young's declaration is "competent proof" that Defendant's principal place of business is in Daytona Beach, Florida. *Hertz*, 559 U.S. at 96-97. Defendant has established this jurisdictional fact by a preponderance of the evidence. *McNatt*, 972 F.2d 1340.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to remand (Doc. 7) is denied.

Dated this 2nd day of July, 2021.

Dominic W. Lanza
United States District Judge

- 5 -